IN THE UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL W. HUSK, ) | |
| 7113 Whipoorwill Ave. ) | Case No.: |
| Hanoverton, Ohio 44423 ) | |
| ) | Judge: |
| v. ) | |
| ) | |
| NORFOLK SOUTHERN RAILWAY CO., ) | |
| c/o Statutory Agent ) | |
| Corporation Service Company ) | |
| 3366 Riverside Drive, Suite 103 ) | |
| Upper Arlington, Ohio 43221 ) | |

**COMPLAINT**
**JURY DEMAND ENDORSED HEREON**

Plaintiff, Michael W. Husk ("Husk" or "Plaintiff"), for his Complaint against Defendant, Norfolk Southern Railway Co. ("NS" or "Defendant"), avers and states as follows.

1. This case stems from discriminatory treatment of Plaintiff during his employment. After Plaintiff took a medical leave of absence, Defendant refused to return him to work despite Plaintiff's medical provider's verification that he could perform all aspects of his job without restrictions. Defendant's conduct constitutes a violation of State and federal law, as provided herein, prohibiting disability discrimination in the workplace.

PARTIES

2. Plaintiff is an individual residing Hanoverton, Ohio and at all times relevant herein was employed by Defendant as a railroad signalman.

3. Plaintiff is an "employee" as defined by the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12111(4), and by the Ohio Civil Rights Law, R.C. Chapter 4112.01(3).

4. Defendant is a Class I railroad organized and existing under the laws of Virginia with its principal place of business in Atlanta, Georgia. Defendant operates approximately 19,500 route miles of track in 22 States and the District of Columbia, serves every major port in the eastern United States, employs approximately 20,000 people, and does a substantial amount of business within the jurisdiction of this Court.

5. Defendant is an "employer" as defined by the ADA, 42 U.S.C. §12111(5) and by Ohio R.C. §4112.01(2).

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331 as Plaintiff alleges claims herein under the ADA.

7. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. §1367 as said claims are so closely related to his ADA claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) as Plaintiff was employed and worked for Defendant in or near Alliance, Ohio within the jurisdiction of this Court. A substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

9. Plaintiff dual-filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") on February 24, 2021 alleging that Defendant discriminated against him in his employment based on his age and disability by not returning him to his job as a railroad signalman.

10. On December 8, 2022, the EEOC determined that there was reasonable cause to believe that, in or around 2021, Defendant discriminated against Plaintiff because of his disability

and his age by denying him the opportunity to return to work in violation of the ADA and the Age Discrimination in Employment Act ("ADEA").

11. On June 27, 2023, the EEOC issued a Notice of Conciliation Failure and indicated that no further efforts will be made by the commission to resolve the matter.

12. A Notice of Right to Sue was served on the parties on June 28, 2023.

13. Plaintiff has properly exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

14. Husk was hired by Norfolk Southern Railway Company in June 2008 as an Assistant Signalman. He was promoted to Signalman in June 2009. He thereafter worked as a Signalman for Defendant primarily in and around Alliance, Ohio.

15. On or about July 18, 2020, Plaintiff suffered a cerebrovascular event, or stroke.

16. He was placed on a medical leave of absence from his employment with NS.

17. He underwent rehabilitation and on or about November 30, 2020, Plaintiff's treating physician released him to return to work as a Signalman with no restrictions.

18. At said time, Plaintiff made a request to Defendant to return to his previous position with NS as a Signalman.

19. Defendant refused to allow him to return to work and advised Plaintiff that it required more medical information.

20. Defendant contacted the physician who treated Plaintiff at the time of his stroke in July 2020 to get clarification on whether Plaintiff qualified to work. The physician stated that Plaintiff was physically capable of performing all duties of the job of a Signalman. He expressed some reservations about Plaintiff working at extreme heights because Plaintiff would have to take

blood thinners, and if Plaintiff fell at work the physician was worried about the possibility of excessive bleeding.

21. On rare occasions, Plaintiff's job duties require him to work on ladders or signal masts above the tracks for the inspection and repair of railroad signal systems.

22. Plaintiff sought another opinion from his primary care physician, who provided him clearance to return to work without restrictions in December 2020.

23. Plaintiff spoke to Kim Johnson, RN, a nurse in Defendant's Health Services Department about returning to his job as a Signalman. Ms. Johnson told Plaintiff that he was not approved to work because of his age and because of the medications he was taking following his stroke.

24. On January 18, 2021, Plaintiff submitted documentation to Defendant from Dr. Shannon Barillare, his primary care physician, that confirmed that he was medically cleared to return to his position without restrictions. The form submitted by Dr. Barillare stated specifically that Plaintiff, given his medical history, was not "at an increased risk of sudden or gradual impairment or incapacitation while performing his duties over the next 3-6 months" or over "the next year"; that Plaintiff "is medically able to safely perform the job duties of Signal Maintainer as described with respect to his cerebrovascular conditions"; that Plaintiff required no further treatment and had achieved full recovery; and that Plaintiff had no functional limitations, work restrictions, and/or need for accommodations, and that he was "ok to [return to work] without restrictions."

25. On January 27, 2021, Defendant's Chief Medical Officer, Natalie Hartenbaum, sent Plaintiff a letter advising him that he was not medically cleared to return to work. The letter

stated that "evidence based guidance related to commercial drivers medical certification recommends a one year waiting period after a stroke prior to requalification."

26. Plaintiff is not required to have or maintain a commercial driver's license as part of his job as a Signal Maintainer.

27. Plaintiff's job was posted for bid in Defendant's system and it was noted that the vacancy was created due to Plaintiff's "disability."

28. Plaintiff continued his efforts to be immediately returned to work without restrictions. On March 15, 2021, he underwent a Functional Capacity Evaluation at the Cleveland Clinic. The examination was based specifically on the job duties of a Signal Maintainer. The evaluation found that based "on the results of objective functional testing this client demonstrated the ability to return to full duty work. Mr. Husk performed all tasks that were asked of him throughout the examination. He appeared to put forth full effort throughout the examination and was very pleasant to work with. He was not limited by any means throughout the examination and did not demonstrate difficulty with any task performed. It is this physical therapist's clinical judgment that Mr. Husk is able to return to work full duty without any restrictions."

29. Plaintiff provided the results of the Functional Capacity Evaluation to Defendant. Defendant continued its refusal to allow him to return to his position.

30. Plaintiff thereafter filed a complaint with the Ohio Civil Rights Commission and EEOC.

31. On May 28, 2021, Plaintiff provided Defendant with a another note from Dr. Barillare that stated Plaintiff has fully recovered from his stroke with no limitations. Dr. Barillare

opined that Plaintiff could perform his job as a signal maintainer with no restrictions and was fully capable of all job descriptions.

32. On June 28, 2021, Defendant permitted Plaintiff to return to work as a Signal Maintainer.

33. There was no change in Plaintiff's medical condition or status from November 30, 2020 until June 28, 2021.

34. Plaintiff did not undergo additional testing or evaluation from a neurologist or other specialist prior to his return to work.

35. From November 30, 2020 until June 28, 2021, Plaintiff was medically capable of performing all essential functions of his job as a Signal Maintainer without the need for accommodation.

36. Defendant refused to return Plaintiff to work from November 30, 2020 until June 28, 2021 because it regarded Plaintiff as disabled.

37. As a direct and proximate result of Defendant's discriminatory refusal to return Plaintiff to his position, Plaintiff suffered a loss of wages and benefits.

38. As a direct and proximate result of Defendant's discriminatory refusal to return Plaintiff to his position, Plaintiff suffered severe and ongoing mental and emotional distress, humiliation, loss of standing in the community, and his ability to enjoy his usual quality of life was adversely affected.

39. Defendant lacked an overriding legitimate business justification for its decision not to return Plaintiff to his position as a Signalman. Plaintiff's past medical condition did not pose a safety risk to himself or others. Department of Transportation regulations regarding victims of

stroke who have commercial driver's licenses do not apply to Plaintiff; he is not required as part of his job to have or maintain a commercial driver's license. Any reliance thereon by Defendant in justifying its intentional and discriminatory actions is merely pretext.

40. Defendant's discriminatory conduct as described herein was intentional, in bad faith or was in wanton, reckless indifference to Plaintiff's rights not to suffer adverse employment action on the basis of his perceived disability.

FIRST CLAIM FOR RELIEF
Americans With Disabilities Act

41. Plaintiff restates each and every allegation in Paragraphs 1 through 40 as if fully rewritten herein.

42. Plaintiff suffered a cerebrovascular event, or stroke, and took a medical leave of absence from his job for Defendant as a Signalman.

43. His medical condition was not transitory and minor as defined in 42 U.S.C. §12102(3)(B).

44. Following his rehabilitation, Plaintiff was cleared by his physicians to return to his job without restrictions or limitations.

45. Defendant took adverse action against Plaintiff by refusing to return him to his position as Signalman because Defendant perceived or regarded Plaintiff as having an impairment or disability.

46. At all times between November 30, 2020 to the present, Plaintiff was capable of safely performing all essential functions of his job as Signalman.

47. Defendant did not have a legitimate, nondiscriminatory reason for not returning Plaintiff to his job as a Signalman after receiving notice from Plaintiff's physicians that he was medically cleared to work without restrictions.

48. Defendant's actions constitute disability discrimination in violation of the ADA.

49. As a direct and proximate result of Defendant's discriminatory practices, Plaintiff suffered harm and damages as fully set forth herein.

50. Defendant's discriminatory conduct was intentional, in bad faith or was in wanton, reckless indifference to Plaintiff's rights not to suffer adverse employment action on the basis of Plaintiff's perceived disability, thereby entitling Plaintiff to punitive damages, compensatory damages, attorneys' fees, and other relief.

SECOND CLAIM FOR RELIEF
Ohio Unlawful Employment Discrimination (Disability) – R.C. §4112 et seq.

51. Plaintiff restates each and every allegation in Paragraphs 1 through 50 as if fully rewritten herein.

52. At all times relevant herein, Plaintiff qualified as an "employee," as defined in R.C. §4112.01(3), and Defendant qualified as an "employer" as defined in R.C. §4112.01(2).

53. R.C. §4112.02(A) provides that it shall be an "unlawful discriminatory practice" for an employer, on the basis of a person's actual or perceived disability, "to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

54. Plaintiff is disabled under R.C. §4112.01(13) because he was regarded by Defendant as having a physical or mental impairment.

55. Defendant took adverse action against Plaintiff by refusing to return him to his job as a Signalman because Defendant perceived or regarded Plaintiff as having an impairment or disability.

56. At all times between November 30, 2020 to the present, Plaintiff was capable of safely performing all essential functions of his job as a Signalman.

57. Defendant did not have a legitimate, nondiscriminatory reason for not returning Plaintiff to his job as a Signalman after receiving notice from Plaintiff's physicians that he was medically cleared to work without restrictions.

58. The conduct of Defendant against Plaintiff constitutes an unlawful discriminatory practice pursuant to R.C. §4112.02(A).

59. As a direct and proximate result of Defendant's discriminatory practices, Plaintiff suffered harm and damages as fully set forth herein.

60. Defendant's discriminatory conduct was intentional, in bad faith or was in wanton, reckless indifference to Plaintiff's rights not to suffer adverse employment action on the basis of Plaintiff's perceived disability, thereby entitling Plaintiff to punitive damages, compensatory damages, attorneys' fees, and other relief.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment from Defendant for each of his claims for relief as follows:

A. Awarding Plaintiff damages for lost wages and benefits;

B. Awarding Plaintiff other economic damages in an amount to be proven at trial;

    C.    Awarding Plaintiff compensatory damages for mental anguish, emotional distress, and other injuries incurred as a result of Defendant's unlawful discrimination;

    D.    Awarding punitive damages against Defendant;

    E.    Awarding Plaintiff his attorneys' fees and costs in bringing this action; and

    F.    Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

    */s/ Andrew J. Thompson*
    Andrew J. Thompson (0071530)
    Neal E. Shapero (0009426)
    SHAPERO | ROLOFF CO., LPA
    1111 Superior Avenue East, Suite 1310
    Cleveland, Ohio 44114
    T: (216) 781-1700
    F: (216) 781-1972
    athompson@shaperoroloff.com
    nshapero@shaperoroloff.com

    *Attorneys for Plaintiff*
    *Michael W. Husk*